UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARLA WRIGHT** | **CIVIL ACTION** |
| **VERSUS** | |
| **GEICO CASUALTY COMPANY** | **NO. 20-00823-BAJ-SDJ** |

RULING AND ORDER

Before the Court is **Defendant GEICO Casualty Company's Motion to Dismiss Plaintiff's Amended Class Action Complaint (Doc. 23)**. Defendant seeks an order from this Court dismissing Plaintiff's claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). The Motion is opposed (Docs. 26, 30). Defendant filed a reply brief. (Doc. 33). For the reasons stated below, Defendant's Motion is **GRANTED IN PART**, solely as to Plaintiff's claims for breach of contract for failure to pay sales tax. In all other respects, Defendant's Motion is **DENIED**.

I. BACKGROUND

A. Relevant Facts

On or about September 10, 2015, Plaintiff was involved in an auto collision. (Doc. 19 at ¶ 35). At the time, Plaintiff was insured by GEICO Casualty Company (GEICO). (*Id.* at ¶ 32). Plaintiff's insurance policy (Policy) provides that in the event of a "*loss*", whether or not caused by a collision, GEICO will pay a sum equal to the "amount of each *loss*, less the applicable deductible." (Doc. 1-2, p. 24–25). "Loss" is defined as "direct and accidental loss of or damage to (a) the auto, including its equipment; or (b) other insured property." (Doc. 1-2, p. 24).

1

However, the Policy does not indemnify Plaintiff against all loss that may arise from a covered event. Section III contains a provision entitled "**LIMIT OF LIABILITY**" that limits GEICO's liability for loss to "the *actual cash value* of the property at the time of the *loss*." (Doc. 1-2, p. 25). The provision also provides that GEICO's liability for loss "will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the *loss*." (*Id.*). "Actual cash value" is defined as the replacement cost of the auto or property "minus depreciation or betterment." (*Id.*). "Replacement cost" is undefined.

Plaintiff alleges that Defendant determined that the loss to her vehicle exceeded the cost to replace it, and therefore Defendant elected to limit its liability pursuant to the Policy. (Doc. 19, at ¶ 36). Defendant calculated the value of Plaintiff's vehicle to be $9,776.21. (*Id.* at ¶ 37). In reaching this sum, Defendant subtracted Plaintiff's deductible from the value and added a post-tax adjustment, but did not add any additional sums to account for the title fee, transfer handling fee, or license plate transfer fee ("Regulatory Fees") which are all required under Louisiana law. (*Id.* at ¶ 38); *See also* LA. REV. STAT. ANN. §§ 32:412.1, 32:728, 47:509. Plaintiff eventually replaced her vehicle and incurred $11.00 in Regulatory Fees that were not covered by GEICO. (*Id.* at ¶ 40).

### B. Procedural History

On January 18, 2021, Plaintiff filed her First Amended Class Action Complaint. (Doc. 19). She alleges that Defendant "systematically and uniformly

2

underpaid Plaintiff[] and thousands of other putative Class Members amounts owed to its insureds who suffered the total loss of a vehicle insured with comprehensive and collision coverage." (Doc. 19, at ¶ 6). Specifically, Plaintiff alleges that Defendant is contractually obligated to pay the replacement cost of an insured vehicle when it is a "total loss"—that is, where the cost to repair the damage exceeds the value of the vehicle. (*Id.* at ¶ 7). Therefore, Plaintiff alleges that Defendant breached its own policy provision "by failing to pay all reasonably necessary replacement costs to Plaintiff, including the title fee, transfer handling fee, and license plate transfer fee." (*Id.* at ¶ 41). Plaintiff further argues that she and the putative class members are entitled to the expenses of litigation, including all attorneys' fees and costs, because Defendant failed to act with good faith when it knowingly refused to pay the full replacement cost of Plaintiff's vehicle, as required by Louisiana R.S. §§ 1892(B)(1) and 22:1973. (*Id.* at ¶ 72–81).

Defendant counters that Plaintiff's Amended Complaint fails to state a plausible claim because the Policy unambiguously "does not cover the ancillary fees Plaintiff seeks," and instead covers only "damage to the auto itself." (Doc. 23-1, p. 6). Defendant argues that Plaintiff has misread the policy in an attempt to expand her coverage under the Policy's limitation of liability provision, in violation of Louisiana law. (Doc. 23-1, p. 8). Regarding the bad-faith claim, Defendant asserts that Plaintiff has failed to adequately plead statutory bad faith as required to recoup litigation expenses under Louisiana law. (Doc. 23-1, p. 9). Defendant further contends that Plaintiff does not have standing to pursue sales tax claims because she was paid for

3

the sales tax she incurred. (*Id.* at p. 12). Finally, Defendant asserts that, because this is a dispute over the amount of "loss" Plaintiff suffered, Plaintiff's claims are premature because they haven't been presented for an appraisal as contemplated by the Policy. (*Id.*).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*,

599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

## III.  ANALYSIS

### A. Plaintiff's Claim for Breach of Contract

#### i. Legal Standard

This putative class action asserts that Defendant must pay the Regulatory Fees and sales tax necessary for its insured drivers to replace their vehicle once Defendant determines that each vehicle is a total loss. The parties agree that the Policy is governed by Louisiana law. Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003)). When defining the terms of a contract, the words "must be given their generally prevailing meaning." LA. C.C. art. 2047 (2020). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *IberiaBank Corp.*, 953 F.3d at 345 (quoting LA. C.C. art. 2046). "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms." *Id.* at 345–346 (quoting *Cadwallader*, 848 So. 2d at 580). Accordingly, "[c]ourts should not 'create an ambiguity where none exists.'" *Id.* at 346 (quoting *Cadwallader*, 848 So. 2d at 580). A policy provision is only ambiguous if the "policy provision is susceptible to two or more *reasonable* interpretations, meaning that each of the

alternative interpretations must be reasonable." *Id.* (quoting *Cadwallader*, 848 So. 2d at 580).

To recover for breach of contract under Louisiana law, a plaintiff must prove: "(1) the obligor's undertaking of an obligation to perform; (2) the obligor failed to perform the obligation (i.e. breach); and (3) the breach resulted in damages to the obligee." *Regions Bank v. C.H.W. Restaurant, LLC*, No. 17-cv-8708, 2018 WL 3136003, at *4 (E.D. La. June 27, 2018) (citations omitted).

### ii. Discussion

The section of the Policy at issue is Section III. (Doc. 1-2, p. 24). Defendant repeatedly contends that under this provision, it is only liable for "loss" under the Policy. (*Id.*). Defendant asserts that the unambiguous definition of "loss" in the Policy does not contemplate the payment of Regulatory Fees or sales tax and that it has fulfilled its obligations under the policy. (Doc. 23-1, p. 6). On the other hand, Plaintiff insists that "the Policy must be interpreted such that [loss] can encompass [actual cash value] because [actual cash value] is within the limit of liability." (Doc. 30, p. 4).

It is true that, as written, Defendant is obligated to only pay for "loss"—that is, damage—to an insured's vehicle. (Doc. 1-2, p. 24). Here, however, Defendant elected not to pay for the total amount of "loss" to Plaintiff's vehicle, and instead chose to limit its liability, as is its right under the Policy. The "limitation of liability" provision provides that Defendant will not pay for more than the "***actual cash value*** of the property at the time of the ***loss***." (*Id.*). Thus, Defendant insists that it will not pay more than the replacement cost of the property, less depreciation or betterment

6

at the time of the loss of the auto. On this point, one court has previously noted that "the dispute turns on whether the phrase 'replacement cost' . . . includes Regulatory Fees. If 'replacement cost' does include Regulatory Fees, then so too would the vehicle's ***actual cash value***, thereby increasing GEICO's limit of liability, and as [p]laintiff asserts, the amount owed in a total-loss situation." *McNichols v. GEICO Gen. Ins. Co.*, 3:20-CV-01497 (KAD), 2021 WL 3079783 (D. Conn. July 21, 2021).

This Court is not the first to address the question of whether GEICO's failure to pay Regulatory Fees under this specific policy provision constitutes a breach of contract. Indeed, the question has been addressed by multiple courts.[1] Among these courts, there is a split as to whether plaintiffs who assert that GEICO's failure to pay Regulatory Fees or sales tax above and beyond the value of the vehicle have stated a claim upon which relief can be granted.

Defendant urges the Court to follow the minority viewpoint articulated in *Sigler* and *Barlow*, which finds that GEICO is not required to pay Regulatory Fees incurred when replacing a vehicle. The United States Court of Appeals for the

---

[1] *See, e.g. Sigler v. GEICO Cas. Co.*, 967 F.3d 658 (7th Cir. 2020) (applying Illinois law to affirm the District Court's dismissal of Plaintiff's contract claim); *Desai v. GEICO Cas. Co.*, 478 F. Supp. 3d 609 (N.D. Ohio 2020) (denying defendant's motion to dismiss breach of contract claim); *Barlow v. Gov't Emp. Ins. Co.*, No. 19-cv-3349 (PKC)(RML), 2020 WL 5802274 (E.D.N.Y. Sept. 29, 2020) (granting defendant's motion to dismiss breach of contract claim); *Jones v. Gov't Emp. Ins. Co.*, Case No. 6:17-cv-891-Orl-40LRH, 2019 WL 3254207 (M.D. Fla. July 19, 2019) (granting plaintiff's motion summary judgment as to breach of contract claim); *Ewing v. GEICO Indem. Co.*, Case No. 5:20-CV-165 (MTT), 2020 WL 5995589 (M.D. Ga. Oct. 9, 2020) (denying defendant's motion to dismiss breach of contract claim); *McNichols*, 2021 WL 3079783 (D. Conn. July 21, 2021) (denying defendant's motion to dismiss as to breach of contract claim); *Burton v. GEICO Cas. Co.*, 4:20-CV-00360-MTS, 2021 WL 3725678 (E.D. Mo. Aug. 23, 2021) (denying motion to dismiss as to breach of contract claim).

Seventh Circuit held that the *Sigler* plaintiff's argument "misconstrue[d] a limitation on liability as a promise to pay. . . . The Limit of Liability section of the policy . . . simply describes the *most* that GEICO will pay in the event of a covered loss. To repeat: the coverage-granting language says only that GEICO will pay for the 'collision loss to the owned or non-owned auto,' with 'loss' defined as 'direct and accidental loss of or damage to' an insured vehicle or '[o]ther insured property.'" *Id.* at 660.

However, neither *Sigler* nor *Barlow* address the interaction between the limitation of liability provision and the promise to pay for "loss" in the contract. For example, as alleged in the Amended Complaint, there are situations where an insured's "loss" may exceed the automobile's value, thereby triggering the limitation of liability provision. (Doc. 30, p. 3). Consider, for example, a scenario where it would cost $10,000 to repair a vehicle worth only $5,000. Rather than paying the full value of the "loss," GEICO may choose to limit its liability and only pay for the "replacement cost" of the vehicle. As alleged in the Complaint, ambiguity arises regarding whether GEICO need only pay the $5,000 the vehicle is worth, less depreciation, betterment, and the applicable deductible, or whether GEICO must include sales tax and Regulatory Fees in addition to the aforementioned sums. Can the promise to pay for "loss" be interpreted in a way that does not include consideration of the provisions of the limitation of liability? *See McNichols*, 2021 WL 3079783, *5.

It is also important to note that *Sigler* and *Barlow* relied, at least in part, on state laws and regulations to clarify the ambiguous nature of the term "replacement

8

cost" in the Policy. *Sigler*, 967 F.3d at 661 ("[T]he policy is not really silent on this subject. An Illinois insurance regulation specifically addresses when an auto insurer must pay sales tax and title and tag transfer fees in a total-loss claim, and the regulation is incorporated into the policy as a default term as a matter of law."); *Barlow*, 2020 WL 5802274, at *6 ("[New York State] Regulation 64, effectively written into the Policy, while providing for the reimbursement of sales tax, does not require payment of ancillary fees, such as license and tag fees."). Defendant points to no Louisiana law or regulation, nor could this Court find any, that clarifies the meaning of the term "replacement cost," or identifies when or if an insurer is required to pay sales tax or Regulatory Fees.

Both parties cite to the Louisiana Third Circuit Court of Appeals' decision in *Clark v. Clarendon Ins. Co.* in support of their respective arguments. 2002-1314 (La. App. 3 Cir. 3/26/03); 841 So. 2d 1039. *Clark* dealt with a policy that did not define the term "actual cash value." The court therefore turned to the "generally prevailing meaning" of the term, as required by Louisiana law, and determined that the term "actual cash value" is generally defined as the "fair or reasonable cash price" of the property—not the replacement cost. *Id.* at 1047 (citing BLACK'S LAW DICTIONARY (4th ed. 1968)). The court then determined that this definition does not encompass sales tax. Similarly, the Fifth Circuit recently considered a car insurance policy that failed to define "actual cash value" and found that—pursuant to Texas Law—the insurer was not required to pay the insured for sales tax and other regulatory fees under the applicable policy. *See Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 338 (5th Cir. 2020).

9

Here, the issue is that GEICO has chosen to define "actual cash value" as replacement cost. The generally accepted meaning of the term "replacement cost" may include all costs associated with replacement, which includes Regulatory Fees, as Plaintiff argues. *See id.* at 336 (noting in dicta that "purchasing and registering [a] replacement vehicle requires the payment of taxes and fees to the state."); *see also* Insurance, BLACK'S LAW DICTIONARY (11th ed. 2019) ("replacement insurance. [] Insurance under which the value of the loss is measured by the current cost of replacing the insured property."). However, it could also mean the cost to replace only the property itself, as Defendant argues. *See* Cost, BLACK'S LAW DICTIONARY (11th ed. 2019) ("replacement cost. [] The cost of a substitute asset that is equivalent to an asset currently held.").

When GEICO elected to limit its liability rather than pay the full value of the losses incurred by the members of the putative class, it created an ambiguity as to how much its liability is limited. This ambiguity is highlighted in Defendant's Notice of Removal. No potential class members were paid transfer fees. (Doc. 1 at ¶ 19). Approximately 21% of potential class members were not paid a title fee. (*Id.*). Approximately 15% of the potential class members were not paid sales tax. (*Id.* at ¶ 20). Where the terms of an insurance contract are ambiguous, "these ambiguities are generally strictly construed against the insurer and in favor of coverage." *Richard v. Anadarko Petroleum Corp.*, 850 F.3d 701, 713 (5th Cir. 2017).

Given the ambiguity as to the definition of "replacement cost" in the Policy, Defendant's failure to pay Regulatory Fees and sales tax could constitute breach of

10

contract. As such, the Court finds that Plaintiff has adequately stated a claim upon which relief can be granted, and Defendant's Motion is denied on this basis.

### B. Plaintiff's Claim for Breach of Contract for Failure to Pay Sales Tax

It is undisputed that Plaintiff is not a member of the 15% of potential class members who were not paid sales taxes. Rather, Defendant paid Plaintiff the sales tax as a part of her "total loss settlement." (Doc. 1-2, p. 35); (Doc. 30, p. 5) ("the letter attaches a settlement explanation that GEICO in fact paid $807.21 in sales tax and $68.50 of title fees necessary to replace a total-loss vehicle."). Defendant argues that, because Plaintiff does not allege that GEICO failed to pay sales tax in connection with her total loss claim, she does not have standing to bring a claim for damages for sales tax, even on behalf of a class. (Doc. 23-1, p. 12). Plaintiff does not oppose this argument.

To assert a case or controversy under Article III of the United States Constitution, a plaintiff must have a "'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021) (citing *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Id.* (citation omitted). "Every class

11

member must have Article III standing in order to recover individual damages . . . for each claim that they press and for each form of relief that they seek." *Id.* at 2208.

Here, it is undisputed that Plaintiff has not suffered any injury due to a failure by Defendant to pay sales tax. Accordingly, Defendant's motion to dismiss Plaintiff's claims for breach of contract specifically for the failure to pay sales tax is **GRANTED**. Plaintiff's claims as to sales tax are dismissed for lack of standing.

### C. Plaintiff's Claims for Litigation Expenses Pursuant to Louisiana R.S. §§ 1892(B)(1) and 22:1973

Plaintiff further alleges that Defendant "has acted in bad faith, been stubbornly litigious, and caused Plaintiff and Class Members unnecessary trouble and expense by failing to comply with the clear requirements of the Policies and Louisiana law." (Doc. 19, at ¶ 79).

Louisiana law requires insurers to pay claims "within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." LA. R.S. 22:1892(A)(1). An insurer's failure to make a timely payment may prompt penalties above and beyond the required payment. *Id.* § 22:1892(B)(1). These penalties are only applicable "when such failure is found to be arbitrary, capricious, or without probable cause." *Id.* Similarly, Louisiana R.S. § 22:1973 provides that an insurer "has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant or both." Any insurer that breaches these duties is liable for damages. *Id.* Further, failure to timely make a payment for a claim, or "failing to pay the amount of any claim due any person within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is

arbitrary, capricious, or without probable cause" subjects the insurer to additional damages. *Id.* § 22:1973(C).

Under Louisiana law, "[T]he phrase 'arbitrary, capricious, or without probable cause' . . . describe[s] an insurer whose willful refusal of a claim is not based on a good-faith defense." *First American Bank v. First American Transp. Title Ins. Co.*, 759 F.3d 427, 436 (5th Cir. 2014). Defendant contends that Plaintiff has not alleged "that GEICO acted in a manner that was arbitrary, capricious, or without probable cause." (Doc. 23-1, p. 10). Defendant argues that Plaintiff's claims are merely a "garden-variety coverage dispute"; therefore, Defendant's conduct does not rise to the level of conduct required to sustain a claim for a violation of these statutes. (*Id.* at p. 11).

While "an insured's cause of action for a breach of the implied covenant of good faith and fair dealing is not limited to the prohibited acts listed in La. R.S. 22:[1973]B," here Plaintiff, in fact, alleges such a violation. *Century Sur. Co. v. Blevins*, 799 F.3d 366, 371 (5th Cir. 2015). Plaintiff's Complaint alleges that Defendant knowingly failed to pay the full replacement cost of the vehicle, as advertised on its website and as mandated by the policy. (Doc. 19, at ¶ 77–78); (Doc. 30, p. 20). Because Defendant never paid these amounts, it necessarily failed to pay the amount of the claim due within the sixty-day period required by Louisiana R.S. §§ 22:1973(B)(5), (6). Failure to do so "constitutes a breach of the insurer's duties" pursuant to subsection A of Louisiana R.S. § 22:1973. Therefore, Plaintiff has adequately pleaded a claim for failure to abide by the duty of good faith, as required

under Louisiana law.

In the alternative, Defendant argues that it has a good-faith defense for failing to pay the aforementioned fees because courts in other jurisdictions have upheld GEICO's practices. (*Id.*). Nonetheless, dismissal is inappropriate at this stage. *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (citing *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

Because Plaintiff has adequately pleaded her claim for litigation expenses, Defendant's motion to dismiss is **DENIED**.

### D. Appraisal

Finally, Defendant argues that because this case is merely "a dispute over the amount of the loss," it should be stayed pending appraisal under the Policy. (Doc. 23-1, p. 12). Under Louisiana law, appraisal clauses in insurance policies are enforceable. *St. Charles Parish Hosp. Service Dist. No. 1 v. United Fire and Cas. Co.*, 681 F. Supp. 2d 748, 753 (E.D. La. 2010). However, these clauses do not deprive the Court of jurisdiction over the matter. *Newman v. Lexington Ins. Co.*, No. 06–4668, 2007 WL 1063578, at *2 (E.D. La. Apr. 4, 2007).

The Policy's appraisal clause provides as follows:

> If we and the ***insured*** do not agree on the amount of the ***loss***, either may, within 60 days after proof of loss is filed, demand an appraisal of the ***loss***. In that event, we and the ***insured*** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the ***actual cash value*** and the amount of the ***loss***. If they fail to agree, they will submit the dispute to the umpire. An award by any two will determine the amount of ***loss*** . . . We will not waive our rights by any of our acts relating to appraisal.

14

(Doc. 1-2, p. 26) ("Appraisal Clause").

Here, as noted, the parties disagree about the meaning of the terms "loss" and "actual cash value" under the Policy. This is a question of contract interpretation, not contemplated by the appraisal clause in the Policy, which is solely intended to arbitrate disputes regarding the amount of a loss. (Doc. 1-2, p. 26). As such, despite Defendant's claim that appraisal would constitute "an efficient dispute resolution mechanism," (Doc. 23-1, p. 13), "there would be meager, if any, gains to judicial economy from an appraisal process that proceeded before the issue of coverage was decided." *Maison Orleans I v. Liberty Mut. Fire Ins. Co.*, Civil Action No. 06-2856, 2006 WL 2460755, *4 (E.D. La. Aug. 22, 2006).

Further, as Plaintiff argues, Defendant's appraisal demand is untimely. (Doc. 30, p. 24). The Appraisal Clause specifically requires that "either party may, within 60 days after proof of loss is filed, demand appraisal of the ***loss***." (*Id.*). Defendant does not contest that more than sixty days has elapsed since the proof of loss was filed. Therefore, Defendant's appraisal demand is untimely. *See Maison Orleans I*, 2006 WL 2460755, *4 (E.D. La. Aug. 22, 2006).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 23) is **GRANTED IN PART**. Specifically, Plaintiff's claims for breach of contract for failure to pay sales tax are **DISMISSED** for lack of standing. In all other respects, Defendant's Motion

to Dismiss is **DENIED**.

Baton Rouge, Louisiana, this 27th day of September, 2021

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**