## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CARLA WRIGHT, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>GEICO CASUALTY COMPANY,<br><br>    Defendant. | CIVIL ACTION<br><br>Number: 3.20-cv-00823-BAJ-SDJ<br><br>JUDGE: Brian A. Jackson<br><br>MAGISTRATE: Scott D. Johnson |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Plaintiff Carla Wright ("Plaintiff"), individually and on behalf of the Settlement Class, files this Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class. Defendant GEICO Casualty Company ("Defendant" or "GEICO") does not oppose this Motion. The Settlement Agreement ("Agreement") was filed at Dkt. No. 81-1.[1]

### I.    FACTS

As set forth in the Motion for Preliminary Approval, Dkt. No. 81, this is a class action lawsuit on behalf of GEICO Louisiana insureds who submitted covered first party auto total loss claims with dates of loss during the class period. (Doc. 19, First Amended Complaint (FAC), at ¶¶ 5–11). All Settlement Class Members were insured under form auto insurance policies with identical material terms. *Id.* ¶ 43; Dkt. No. 81-2, Declaration of Christopher Hall ("Hall Decl.") at ¶ 4. Plaintiffs allege that GEICO failed to pay the mandatory fees required under Louisiana law to buy a replacement vehicle. FAC, ¶¶ 32–41.

---

[1] For purposes of this memorandum, capitalized terms shall have the meanings provided in the Agreement.

### A.     Plaintiff's Total Loss Claim and GEICO's Alleged Breach.

Plaintiff and Settlement Class Members entered into Louisiana private passenger auto policy agreements to be insured by GEICO under terms contained in form policies (the "Policies") with material total loss physical damage terms that were the same for Plaintiff and all Settlement Class Members. *Id.* ¶ 43. The Policies provided physical damage coverage for Plaintiffs and class members' total loss vehicles. *Id.* ¶¶ 13–16. Plaintiff alleges the Policies required GEICO to pay actual cash value ("ACV") on total loss claims, which is defined in the Policies as the auto's "replacement cost" less depreciation. *Id.* ¶ 17-18. In turn, Plaintiff alleges the "replacement cost" of a total loss vehicle in Louisiana includes the regulatory fees required under Louisiana law, including title transfer fees, title handling fees, and registration and tag transfer fees. *Id.* ¶¶ 29–31. Louisiana law prohibited the purchase, transfer, or lease of a vehicle without the payment of a title fee and title transfer handling fee and a license plate transfer fee. La. R.S. § 32:412.1 (A)(3)(b); 32:728.

Plaintiff and Settlement Class Members suffered total losses of their insured vehicles. Dkt. No. 50 at 1–2. Plaintiff alleges she and each Settlement Class Member were underpaid by GEICO due to its failure to include Transfer Fees in the payments for their total loss claims.

### B.     Class Member Claims.

Discovery revealed that approximately 65,000 class members submitted first party total loss claims during the class period and were not paid the full Transfer Fees Plaintiff claims were owed under the Policies. Hall Decl. at ¶ 5. The total claimed underpayments that GEICO has agreed to pay under the proposed settlement comprises approximately $1,022,125.00. *Id.* ¶ 6; Dkt. No. 81-3, Report of Jeffrey Martin ("Martin Report"), at ¶ 15.

50074423.1

### C.     Procedural Background.

On November 5, 2020, Plaintiff Wright filed a putative class action Complaint in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana, against GEICO. The Complaint alleged GEICO underpaid the Transfer Fees to its Louisiana insureds on auto insurance total loss claims. (Dkt. No. 1-1.) On December 8, 2020, GEICO filed a Notice of Removal. (Dkt. No. 1.) On December 28, 2020, GEICO filed a Motion to Dismiss, Dkt. No. 13, after which Plaintiff filed a First Amended Complaint. (Dkt. No. 19.)

On February 9, 2021, GEICO filed a Motion to Dismiss the First Amended Complaint, Dkt. No. 23, to which Plaintiff filed a response in opposition. (Dkt. No. 26.) On March 16, 2021, GEICO filed a reply in further support of the Motion to Dismiss. (Dkt. No. 33.) On July 22, 2021, Plaintiff filed a Notice of Supplemental Authority in support of its opposition to the Motion to Dismiss. (Dkt. No. 37.) On September 27, 2021, the Court granted in part and denied in part the Motion to Dismiss. (Dkt. No. 46.) On October 12, 2021, GEICO filed an Answer to the First Amended Complaint. (Dkt. No. 47.)

On December 20, 2021, Plaintiff filed her Motion for Class Certification and Memorandum of Law in Support. (Docs. 50–53). On April 4, 2022, GEICO filed its Response in Opposition to Plaintiff's Motion for Class Certification. (Doc. 60). On April 8, 2022, Plaintiff filed a Motion for Leave to File Reply in Support of her Motion for Class Certification, which was granted, after which Plaintiff filed the Reply. (Dkt. Nos. 63, 66–67.)

In July 2022, the Parties moved to hold class certification in abeyance while they were engaged in substantive settlement discussions. (Docs. 68, 70). The parties reached a settlement in principle in 2023. On November 30, 2023, Plaintiff filed the proposed Settlement Agreement,

3

along with a Motion seeking preliminary approval thereof, and for the Court to direct that Notice be provided to the Class, thereby providing an opportunity for Settlement Class Members to review the proposed Settlement Agreement, opt out of the Class if they so chose, or, if they identified any deficiencies, to object. Dkt. No. 81. After conducting a Hearing on the Motion, this Court granted the Motion for Preliminary Approval on January 19, 2024, and scheduled a final Hearing to occur on May 15, 2024. Dkt. No. 87.

### D.  The Agreement Provides 80% Payment of Mandatory Fees Sought.

As Plaintiff explained in seeking preliminary approval, the proposed Agreement provides payment of 80% of Transfer Fees (minus a set off for fees already paid, if any, to the claimant by GEICO) of the amount alleged to be owed to Plaintiff and all class members who submit a claim. Hall Decl. at ¶ 10; Agreement at ¶¶ 1(R), 5. The State of Louisiana imposes regulatory fees associated with the tiling or registration of a vehicle in Louisiana. (Dkt. No. 53-4 at § 1.)  The title fee imposed is a set amount of $68.50 for vehicles purchased from July 1, 2015, through the present, and $18.50 for the period prior to July 1, 2015. *Id.*; *see also* Dkt. No. 55-5 20; La. R.S. § 32:728. The State also imposes a handling fee for vehicle titling and registration, which is set by statute at $8.00 per transaction. (Dkt. No. 53-4 at § 4.C); *see also* La. R.S. § 32:412.1. Louisiana imposes license plate fees on the registration of a newly acquired vehicle. To properly register a car, van, or SUV, the State imposes a fee based on the sale price of the vehicle. *Id*. at § 4.F. For any vehicle with a value less than $10,499, the plate fee is $20, with a $2 increase for every $1,000 increase in value. *Id*. For a car valued at $13,000.00, for example, the registration fee is $26.00. Hall Decl. ¶ 5.

The cash benefit available to class members in the settlement is approximately $1,022,125.00. Agreement at ¶ 5(A); Martin Decl. at ¶ 15; Hall Decl. at ¶ 9.  The Agreement also

secured significant future non-monetary relief for GEICO insureds—as part of the settlement, GEICO agreed to pay title and handling fees in Louisiana on a going-forward basis. Agreement at ¶ 6.

### E.  The Agreement Provided Robust Notice and Easy Claim Submission.

The Settlement, and this Court's Order directing that the Notice Plan be effectuated as set forth in the Settlement Agreement, provided a robust notice and easy claim submission. All class members received a Postcard Notice with a detachable pre-filled, return addressed, and pre-paid postage claim form to simply sign and place in the mail. Dkt. No. 91-1 (Settlement Administrator Decl.) at 3-4 and exhibits thereto; Agreement at ¶ 10(I). The Claim Form (Ex. 1 to Agreement) attached to the Postcard Notice did not require the insured to provide any information other than to sign the claim form and provide a corrected address if needed. *Id.* The Postcard Notice also directed recipients to a Settlement Website, which was established by the Claims Administrator and included information about the Agreement and links to documents related to the lawsuit and Agreement. *Id.* ¶ 7(B); Dkt. No. 91-1 at ¶¶ 13-14.

The Agreement also required a second reminder postcard notice in the same form that also includes a detachable pre-filled, return addressed, and pre-paid postage form to simply sign and place in the mail, which the Settlement Administrator confirmed was delivered in accordance with the Agreement and this Court's Order. Agreement at ¶ 10(I) ; Dkt. No. 91-1 at ¶ 10-11. The comprehensive nature of the Notice Plan is seen in that an incredible *98.4% of Settlement Class Members* received direct, actual Notice. Dkt. No. 81-1 at ¶ 12; *cf. In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001) (holding Rule 23 and due process requisites satisfied where the record indicated only 77% of class members actually received notice of the settlement);

The Agreement required a Long Form Notice and other important case documents to be available to class members on the Settlement Website. Agreement at ¶¶ 7(B), 10(II).

Members of the Settlement Class were also provided the alternative option of downloading a claim form online that was either blank or pre-filled if the Settlement Class Member entered their Claimant ID (which was reflected on the Postcard Notices). Agreement, ¶ 1(E).

The Agreement also provided for a toll-free number for class members to submit questions and request additional information. Agreement at ¶ 10(III); Dkt. No. 81-1 at ¶¶ 15-16. *See Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence that the terms of settlement are fair and reasonable).

### F.  The Agreement Provides a Limited Release.

The release is narrow. Agreement at ¶ 14. Class members release claims only for "non-payment of fees (including, but not limited to, title, registration/handling, plate and other fees) as part of total loss claim settlements." *Id.* They do not release any claim for any other type of claim for vehicle valuation or any other type of claim underpayment. *Id.*

### G.  The Agreement Resolves a Case With Unsettled Legal Issues.

In pursuing the Transfer Fees sought in this Action, Plaintiff contended with legal authority inconsistent with Plaintiff's claims. Specifically, multiple Louisiana state appellate courts have held that sales tax was not an element of actual cash value owed by an insurer in the event of a total loss. *State Farm Mut. Auto. Ins. Co. v. Berthelot*, 98-1011 (La. 4/13/99), 732 So. 2d 1230, 1235; *Clark v. Clarendon Ins. Co.*, 2002-1314 (La. App. 3d Cir. 3/26/03), 841 So. 2d 1039. The reasoning of these opinions might have precluded Plaintiff from obtaining the Transfer Fees sought here. Other courts have also rules against insureds on similar claims, including claims against GEICO. *See, e.g.*, *Wilkerson v. Am. Family Ins. Co.*, 997 F.3d 666 (6th Cir. 2021); *Sigler v. Geico*

*Cas. Co.*, 967 F.3d 658 (7th Cir. 2020). Plaintiff believes these cases are distinguishable and/or were wrongly decided, but clearly they highlight the risk of continuing litigation.

As to the Louisiana cases in particular, Plaintiff disputes the applicability of these decisions given the enactment in 2010 of La. Rev. Stat. § 22:1892(B)(5), which provides in part that settlement payments of total loss motor vehicle claims based on actual cash value should be "based on the actual cost to purchase a comparable motor vehicle." *See* 2010 La. H.B. 1011. But, there are no Louisiana appellate courts who have weighed in on this issue and the conflicting authority raises genuine uncertainty as to how the case would be decided on the merits (to say nothing class certification would have been upheld on appeal). The Agreement resolves these issues in favor of the Settlement Class. Agreement at ¶ 5.

### H.  The Agreement Provides Reasonable Attorneys' Fees.

This was a highly contested lawsuit relating to a novel legal theory without precedent relating to the payment of certain Transfer Fees pursuant to a statute that had not been applied to similar facts. Hall Decl. at ¶ 12. The proposed Agreement provides that Class Counsel may apply for attorneys' fees and costs not to exceed $260,000.00. Agreement at ¶ 8(A); Hall Decl. at ¶ 13. The percentage for attorneys' fees of 26% falls within the benchmarks set for attorneys' fees in other Louisiana District Courts. The reasonableness of attorneys' fees and costs are more fully set forth in the previously-filed Motion for Attorneys' Fees and Costs and Service Award. Dkt. No. 90.

### II.    THE AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.

A class settlement may be effectuated only with court approval, after notice to the class, pursuant to Fed. R. Civ. P. 23(e). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a

hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). Whether a proposed agreement is sufficiently fair and reasonable is analyzed under a six-factor test: (1) the existence of any fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery; (4) the probability of success; (5) the range of possible recovery; and (6) the opinions of the counsel, class representatives, and absent class members. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)

The Agreement should be approved because it is fair, reasonable, and adequate, not the subject of collusion. Fed. R. Civ. P. 23(e)(2); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993); Ex. B, Hall Decl. at ¶¶ 7–10 (explaining arms-length negotiations without collusion). Critically, after robust Notice was provided, not a single class member objected to the terms of the proposed Agreement.

In addition to or consistent with the *Reed* factors, to determine whether a settlement is fair, reasonable, and adequate, Rule 23(e) instructs courts to consider:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Each of these factors support finding that the class Agreement is fair, reasonable, and adequate.

### i.     Arm's Length Negotiations, Fraud, and Collusion

The Agreement is not the product of fraud or collusion as it was rigorous, hard, fought, and the product of arm's length negotiation between sophisticated counsel. Hall Decl. ¶ 8. "The parties entered the proposed settlement agreement after a full-day mediation—which 'suggests the settlement was not the result of improper dealings.'" *Celeste v. Intrusion Inc.*, 2022 U.S. Dist. LEXIS 226841, at *12 (E.D. Tex. Dec. 16, 2022) (quotation omitted); Hall Decl. ¶ 8. Furthermore, there is no evidence of fraud or collusion. *See Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, at *33 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary.").

### ii.     The Relief is Adequate Given the Complexity, Expense, and Likely Duration of Litigation

By reaching a settlement, "Plaintiff is avoiding expense and delay and ensuring recovery for the Class." *Hays v. Eaton Grp Attys., LLC*, No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029, at *25 (M.D. La. Feb. 4, 2019). Even for straightforward claims, approval of settlement is favored where settlement "avoids the risks and burdens of potentially protracted litigation." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006).

Plaintiff's Motion for Class Certification was fully briefed, and the issues presented to the Court were complex. There were risks to both sides relating to the class certification decision; and it has been GEICO's practice in the past to seek Rule 23(f) interlocutory review when class certification is granted.  Moreover, an ultimate trial of this case involving extensive data would be lengthy, burdensome, and exceedingly costly in both time and resources of the parties and the

Court. A judgment would likely be appealed thereby extending the litigation and forestalling relief for potential class members. "The settlement, on the other hand, makes monetary and injunctive relief available to Class members in a prompt and efficient manner." *Hays*, 2019 U.S. Dist. LEXIS 17029, at \*25. This factor thus supports approval of the Agreement.

### iii.    The Stage of the Proceedings

"This factor asks whether the parties have obtained sufficient information 'to evaluate the merits of the competing positions.'" *In re Educ. Testing Serv. Praxis Principles of Learning*, 447 F. Supp. 2d at 620 (quoting *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). "[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed . . . ." *Id.* at 620–21. "[W]hen the settlement proponents have taken affirmative steps to gather data on the claims at issue, and the terms of the settlement or settlement negotiations are not patently unfair, the Court may rely on counsel's judgment that the information gathered was enough to support a settlement." *Id.* at 621.

This proceeding had advanced beyond the pleadings after Plaintiff overcame Defendant's serial motions to dismiss. Plaintiff has taken substantial discovery—including written discovery, multiple depositions concerning liability and damages—and consulted with expert witnesses regarding the entitlement to and computation of alleged damages. Hall Decl., ¶ 21. Moreover, Plaintiff had gained sufficient discovery to file a Motion for Class Certification, which was fully briefed when the parties reached a settlement. Through these efforts, the parties obtained sufficient information to make a reasoned determination on the desirability of settlement on the terms set forth in the Agreement.

### iv.        The Factual and Legal Obstacles to Prevailing on the Merits

This case is subject to legitimate risk. "Litigation is inherently risky and full of impediments, even where a defendant 'all but admitted' and 'the plaintiffs had a strong chance of proving' liability." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *25 (quoting *In re Educ. Testing Serv. Praxis*, 447 F. Supp. 2d at 620–21). "A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172.

A trial would invariably involve risks to Plaintiff on the questions of liability and damages. *See Hays*, 2019 U.S. Dist. LEXIS 17029, at *25. Plaintiff risked denial of class certification by this Court; and appellate review of district court decisions on class certification are difficult to predict. Proceeding without a settlement would require tremendous time and resources to litigate dispositive motions, prevail at trial, and prevail again at the appeals of class certification, liability and damages. *See id.* And this case is subject to an added dimension of legal obstacles as the theory pressed by Plaintiff is novel and arguably contradicted by opinions from Louisiana appellate courts which have not been overturned, as well as potentially persuasive opinions (albeit concerning the laws of different states) rejecting claims similar to Plaintiff's. *See* Hall Decl., ¶ 11; *Wilkerson*, 997 F.3d 666; *Sigler*, 967 F.3d 658.

### v.        The Possible Range of Recovery and Certainty of Damages

Approval should not be withheld merely because the settlement amount amounts to less than the full *potential* recovery. "[A] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *28 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380,

1386 (S.D.N.Y. 1972), *aff'd in part*, *rev'd on other grounds*, 495 F.2d 448 (2d Cir. 1974) (a recovery of 3.2% to 3.7% of the amount sought is "well within the ball park").

Here, GEICO agreed to a settlement in which Settlement Class Members are entitled to 80% of the regulatory fees sought in this action. Agreement, ¶ 1(R), 5; Hall Decl., ¶ 10. This recovery is well above the low end of the recovery ($0) and near the high end. It is *far* higher than amounts other courts have easily found to be fair and reasonable. *See, e.g.*, *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 304-05 (S.D. Miss. 2014) (approving damages of 46.5% of potential recovery and noting that "A satisfactory settlement could amount to a hundredth or even a thousandth part of a single percent of the potential recovery") (cleaned up) (citing *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982)); *In re Polyurethane Foam Antitrust Litig.*, 2015 U.S. Dist. LEXIS 23482, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide overcharges is an impressive result in view of these possible trial outcomes."); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 U.S. Dist. LEXIS 9705, at *9 (E.D. Pa. May 19, 2005) (11.4% of damages) Accordingly, this factor favors approval of the Settlement.

### vi.    The Opinions of Class Counsel and the Class Representative

The parties and class counsel unanimously support the proposed settlement, lending further support to approval of the Agreement. *See Celeste*, 2022 U.S. Dist. LEXIS 226841, at *21; *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (noting that "absent fraud, collusion, or the like," the Court "should be hesitant to substitute its own judgment for that of counsel"); Hall Decl., ¶¶ 18, 23. Moreover, after robust and comprehensive Notice, *not a single Class Member objected* and only a single Class Member opted out. This is an incredible result, indicating overwhelming (indeed, unanimous) approval of the proposed Settlement, and strongly favors approval of the

Agreement. *See generally, e.g.*, *In re Oil Spill*, 295 F.R.D. 112, 150 (E.D. La. 2013) (noting that "one indication of the fairness of a settlement is the lack of or small number of objections"); *Quintanilla v. A & R Demolition Inc.*, No. H-04-CV-1965, 2008 U.S. Dist. LEXIS 37449, 2008 WL 9410399, *5 (S.D. Tex. May 7, 2008) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 527 (E.D. Ky. 2010) (finding that 12 objections out of a class of approximately 8,000 was "within the range of reasonableness" and militated in favor of approval); *Amos v. PPG Indus.*, No. 2:05-cv-70, 2019 U.S. Dist. LEXIS 139021, at *30 (S.D. Oh. Aug. 16, 2019) ("[N]o objections were filed, which creates the inference that all or most of the class members had no concerns about the proposed settlement. This positive response weighs in favor of approving the settlement.").

It is not that a "small number" of objections were filled—there were *none at all*. The importance of this cannot be overstated: Typically, if the Parties believe they have a favorable Settlement and so does a court, Notice is provided to absent Class Members so they can review the proposed terms and identify any alleged weaknesses or deficiencies, with the main purpose of the final Fairness Hearing—assuming the Parties disagree and choose not to modify the proposed terms in light of the objections—being to resolve such objections. Here, there are no objections to resolve. This *strongly* militates in favor of approving the proposed Agreement.

## III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.

The Plaintiffs seek to certify a Settlement Class consisting of:

[A]ll individuals insured under a GEICO Louisiana personal auto physical damage policy who (1) made a first-party property damage claim from November 5, 2010, through the date on which a Motion for Preliminary Approval is filed, where (2) GEICO determined the claim to be a covered comprehensive or collision claim, and where (3) the claim was determined to be and adjusted and paid as a total loss. Excluded from the Settlement Class are: (1) GEICO employees; (2) any members

of the judiciary assigned to the Action and their staff; (3) the Parties' counsel in the Action; and (4) any persons with total loss claims resolved through appraisal, arbitration or after litigation via final judgment or settlement (or in the process of appraisal, arbitration or litigation) or where GEICO received a release..

Settlement Agreement at ¶ 1(F). Rule 23's certification requirements "generally apply when certification is for settlement purposes." *In re Pool Prods. Distrib.*, 310 F.R.D. at 308. As shown below and as the Court already agreed, each Rule 23 requirement is met for purposes of Settlement.

### A. The Class Meets All of the Requirements of Fed. R. Civ. P. 23(a)

#### i. The Class is so numerous that joinder is impracticable.

A class is sufficiently numerous where "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, a reasonable estimate is that the Class is comprised of more than 35,000 total-loss insureds. Hall Decl. at ¶ 5. As such, numerosity is easily met. *See Nolan v. Exxon Mobil Corp.*, 2015 U.S. Dist. LEXIS 62619 *11 (M.D. La. May 13, 2015) (proving numerosity requires merely "some evidence or reasonable estimate of the number of purported class members.") (internal quotations omitted); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (100-150 members is generally certifiable).

#### ii. Questions of law and fact are common to the Class.

Rule 23(a)(2)'s commonality requirement is satisfied when "there are questions of law or fact common to the class." The plaintiff must show "at least one issue, the resolution of which will affect all or a significant number of the putative class members." *A.A. v Phillips*, 2021 U.S. Dist. LEXIS 98189, at *30 (M.D. La May 25, 2021). Commonality is satisfied "where a question of law linking class members is substantially related to the resolution of the litigation." *Hays v. Eaton Grp Attorneys, LLC*, 2019 U.S. Dist. LEXIS 17029, at *12 (M.D. La. Feb. 4, 2019). While the requirement may require common injurious conduct—here, failure to pay ACV Transfer Fees—it does not require common damages. *In re Deepwater Horizon*, 739 F.3d at 811.

14

Commonality is satisfied because whether GEICO breached the form Policies by failing to pay cost necessary to replace a total-loss vehicle, and thus failed to properly pay ACV, is a common question of law, for which interpretation of uniform Policy language would provide a common answer. *See, e.g.*, *Allapattah v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (commonality established where the court interpreted materially similar contracts); *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F.Supp.2d 891, 927–28 (E.D. La 2012) (claims arising from standardized contracts satisfy commonality requirement because "the contracts at issue are functionally identical"). Rule 23(a)(2) is satisfied here.

### iii. Plaintiff's claim is typical of Settlement Class Members.

Rule 23(a)(3) requires "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The threshold for showing typicality is not demanding, and it focuses on the general similarity of the legal and remedial theories behind plaintiffs' claims. *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997). Thus, "many courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." 7A Wright & Miller, Federal Practice and Procedure § 1764 (2014).

GEICO's practices described herein are uniform and Plaintiff's claims are based on the same legal theory—her identical insurance contracts with GEICO was materially breached because ACV includes costs reasonably likely to be incurred. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). Plaintiff's claims are also subject to the same affirmative defenses as absent Class Members. But even the presence of a unique defense or factual circumstance does not preclude a finding of typicality unless it is likely to overwhelm the litigation. *See Plaza 22, LLC v. Waste Mgmt. of La., LLC*, 2015 U.S. Dist. LEXIS 30405 *14 (M.D. La. Mar. 12, 2015)

(quotations omitted) (a key inquiry to the typicality analysis is whether the class representative or other plaintiffs would be "dominated by individual evidence"). Typicality is satisfied here.

### iv.    The named Plaintiff is an adequate representative.

Rule 23(a) requires that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The purpose of this requirement is to ensure the plaintiffs "suffer the same injury" as class members and identify whether they have interests antagonistic to the class. *See In re Deepwater Horizon*, 785 F.3d at 1015.

Plaintiff is committed to protecting the interests of the Class, as seen by her prosecution of the claim through the counsel she retained and her engagement in the discovery process, as well as the favorable terms she secured on behalf of Settlement Class Members. Hall Decl. at ¶¶ 16–18; *see Doiron v. Conseco Health Ins. Co.*, 240 F.R.D. 247, 253 (M.D. La. 2007) (the hiring of "qualified" class counsel that provide "diligent and competent representation" as they participate in the litigation is evidence of adequacy), *vacated on other grounds*, 2008 U.S. App. LEXIS 11376 (5th Cir. La., May 28, 2008). There is no suggestion that any conflict of interest exists nor any threat this litigation could benefit some Class members while harming others. *See generally Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (a conflict precluding adequacy occurs only if it is "fundamental," meaning that some class members would be "harmed by the same conduct that benefitted other[s]").

Further, Plaintiff's counsel is experienced in litigating class actions and complex litigation, including originating the theory and successfully litigating class actions asserting the same claims as presented here, and had and have the resources to prosecute the claim. Hall Decl. at ¶¶ 26–32; *see* Fed. R. Civ. P. 23(g) (listing factors relevant to appointing class counsel); *Mays v. Nat. Bank of Com.*, 1998 U.S. Dist. LEXIS 20698, at **22-23 (N.D. Miss. Nov. 19, 1998) (counsel's

adequacy shown by their "substantial experience with class litigations as well as familiarity with particular issues in the case"); *Carmen v. R.A. Rogers, Inc.*, 2018 U.S. Dist. LEXIS 174461, at **10-11 (W.D. Tex. Apr. 25, 2018) (counsel's adequacy demonstrated by ability to devote resources to the litigation). The adequacy requirement is thus met.

**B. The Putative Class Should be Certified Pursuant to Fed. R. Civ. P. 23(b)(3).**

    **i.   Common questions of law and Fact predominate over any questions affecting only individual Class Members.**

To satisfy predominance, "common issues must constitute a significant part of the individual cases." *Mullen*, 186 F.3d at 626. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 622–23 (1997)). The inquiry should focus on "how resolution of an allegedly common question of law or fact will decide an issue central to an element or defense of each of the class members' claims at once." *In re Pool Prods. Distrib.*, 310 F.R.D. at 311. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the predominance prong is easily satisfied. Indeed, courts routinely find common issues predominate in cases involving interpretation of uniform insurance policies. *See, e.g.*, *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 710 (5th Cir. 2020); *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 375 (8th Cir. 2018); *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459-60 (6th Cir. 2020). The predominating issue in this litigation is whether GEICO's policies include coverage for Mandatory Fees as components of ACV due after a total loss, and this identical policy language governs every Class Member. Plaintiff contends the uniform policy

17

to not include regulatory fees in ACV payments breached the Policy for *every* Class member in precisely the same way. *See* Dkt. No. 50, at Ex. B thereto, Rustik Dep. at 46–49. Not only does the answer to this question depend on form policy language equally applicable to all Class members, but it is also a legal question of contract interpretation devoid of factual inquiry that might create individual issues. *See Snelling & Snelling, Inc. v. Fed. Ins. Co.*, 205 F. App'x 199, 201 (5th Cir. 2006).

### ii.  This Class Action is the Superior Method of Adjudication.

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem*, 521 U.S. at 617. The Supreme Court's reasoning in *Amchem* is applicable here, since the amount at stake for any plaintiff individually would not make a lawsuit economical. Certifying this action as a class action for settlement purposes will allow final resolution of many claims through an efficient mechanism.

### C.  The Claims-Made Structure Does Not Undermine Approval

As Plaintiff previously explained in the Motion for Preliminary Approval, as this Court agreed in granting preliminary approval, and as Settlement Class Members apparently agree in that not a single one objected to the proposed terms of the Settlement, the claims-made structure does not impact the "fairness, reasonableness, or adequacy of proposed settlement." *Hamilton v. SunTrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 154762, at *18 (S.D. Fla. Oct. 24, 2014). Defendant made clear it would not settle absent the claims-made structure. (Hall Decl. at ¶ 24).  And as courts have explained, whether a settlement compares favorably to a hypothetical settlement to which the

parties did not agree is irrelevant. *See, e.g.*, *Casey v. Citibank, N.A.*, 2014 U.S. Dist. LEXIS 156553, at *6 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant") (citing *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")). The question is not whether a claims-made settlement compares favorably to a hypothetical, non-existent settlement, but rather whether the Settlement is fair and reasonable on its own terms. *See Casey*, 2014 U.S. Dist. LEXIS 156553 ("The Court does not have the authority to impose a preferred payment structure upon the settling parties").

The Agreement removes the risk that the Class will recover nothing due to an unfavorable ruling on class certification, summary judgment, or any appeal therefrom. Despite removing such risk, far from accepting a significant reduction in the potential damages, the Agreement provides, to those Settlement Class Members who submit a valid claim, approximately 80% of the total damages that could have been recovered at trial. (Hall Decl. at ¶¶ 6, 9–10; Martin Decl. at ¶ 15).

The Agreement removes the risk that the class will recover nothing due to an unfavorable ruling on class certification, summary judgment, or any appeal therefrom. Despite removing such risk, far from accepting a significant reduction in the potential damages, the Agreement provides over 80% of the total damages that could have been recovered at trial. For all such reasons, Plaintiff believes the Agreement is fair and reasonable to the Class.

## **CONCLUSION**

Plaintiff respectfully requests that the Court grant final approval of the proposed settlement, and enter an order that includes the content of the proposed order attached as Exhibit 1 hereto.

Respectfully submitted this 8th day of May, 2024.

/s/ Jake Phillips
Jacob Phillips (admitted *pro hac vice*)
**JACOBSON PHILLIPS PLLC**
478 E. Altamonte Dr., Suite 108-570
Altamonte Springs, FL 32701
Tel: (407) 720-4057
jacob@jacobsonphillips.com

Stephen J. Herman, La. Bar No. 2312
Soren E. Gisleson, La. Bar No. 26302
John S. Creevy, La. Bar No. 30879
Charles M. King, La. Bar No. 34621
**HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
sherman@hhklawfirm.com
sgisleson@hhklawfirm.com
jcreevy@hhklawfirm.com
cking@hhklawfirm.com

Christopher B. Hall (admitted *pro hac vice*)
**HALL & LAMPROS, LLP**
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Tel: (404) 876-8100
Fax: (404) 876-3477
chall@hallandlampros.com

*Attorneys for Plaintiff*

50074423.1

50074423.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of May, 2024, I electronically filed a true and exact copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/Jake Phillips
Jacob Phillips (admitted *pro hac vice*)
Attorney for Plaintiff

22